ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff R. Alexander Acosta, Secretary of Labor for the United States Department of Labor ("Plaintiff") commenced this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. , on January 5, 2018. (Dkt. 1). Plaintiff seeks to obtain relief for breaches of fiduciary duty under ERISA § 409 and to enjoin acts and practices which violate the provisions of Title I of ERISA from defendants Jeffrey Bratcher; Sarah Bratcher; Global Tradequest, Inc. dba Buyquest, Inc. ("Global Tradequest"); and Global Tradequest *111 401(k) PSP & Trust ("the Plan") (collectively "Defendants") for allegedly failing to forward contributions withheld from employee wages to the Plan. (Dkt. 1).
Presently before the Court is a proposed consent order and judgment ("proposed Consent Judgment") for approval. (Dkt. 16). For the reasons set forth below, the Court finds the proposed Consent Judgment to be acceptable.
BACKGROUND
The following alleged facts are drawn from the complaint. Jeffrey Bratcher was the President of Global Tradequest, and Sarah Bratcher was the General Manager of Global Tradequest. (Dkt. 1 at ¶¶ 7, 9). The Plan was an employee benefit plan within the meaning of 29 U.S.C. §§ 1002(2) and (3) and covered the employees of Global Tradequest. (Id. at ¶ 5). Both Jeffrey and Sarah Bratcher exercised discretionary authority or control respecting management of the Plan and its assets and had discretionary authority or responsibility in administering the Plan. (Id. at ¶¶ 8, 10). Additionally, Sarah Bratcher was a limited trustee of the Plan, and Global Tradequest was the plan administrator. (Id. at ¶¶ 6, 11).
The Plan's governing documents provided that participating employees would contribute to individual retirement accounts via payroll deductions. (Id. at ¶ 12). Global Tradequest and Sarah Bratcher were supposed to deposit the contributions withheld from the employees' paychecks into said individual accounts. (Id. at ¶ 13). Employees could also apply for a loan from the Plan that they repaid with interest. (Id. at ¶ 14). Between November 16, 2014, and February 16, 2017, Global Tradequest, Sarah Bratcher, and Jeffrey Bratcher failed to deposit at least $23,612.19 in employee contributions and loan repayments into the Plan. (Id. at ¶ 15). This money was never segregated from Global Tradequest's general assets (Id. at ¶ 16), and as a result, the employees lost the opportunity to realize at least $872.28 in interest. (Id. at ¶ 17).
On January 5, 2018, Plaintiff filed the instant lawsuit, asking for injunctive and monetary relief. (Id. at 6). On August 14, 2018, the proposed Consent Judgment was filed. (Dkt. 16).
DISCUSSION
I. Standard for Approving a Consent Judgment
"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public interest would not be disserved' ... in the event that the consent decree includes injunctive relief." S.E.C. v. Citigroup Global Markets, Inc. , 752 F.3d 285, 294 (2d Cir. 2014) (quoting eBay, Inc. v. MercExchange, L.L.C. , 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) ); see Chao v. Slutsky , No. CV 01-7593(SLT)(ETB), 2009 WL 3174757, at *3 (E.D.N.Y. Mar. 27, 2009) (stating the standard for approving a proposed ERISA consent order is "whether the settlement is fair, adequate and reasonable, and not a product of collusion." (internal quotation omitted) ), declined adoption on other grounds by Chao v. Slutsky , No. 01-CV-7593 (SLT)(ETB), 2009 WL 3174711 (E.D.N.Y. Oct. 2, 2009).
"[I]n evaluating the proposed [c]onsent [d]ecree, deference is accorded to a government agency ... and other parties proposing the settlement. Further, the policy of encouraging settlements is particularly strong where the settlement is proposed by a government agency acting in the public interest."
*112 United States v. Gen. Elec. Co. , 460 F.Supp.2d 395, 401-02 (N.D.N.Y. 2006) (citations omitted), aff'd sub nom. Town of Ft. Edward v. United States , No. 06-5535-CV, 2008 WL 45416 (2d Cir. Jan. 3, 2008). "It is well settled that the function of the reviewing court is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." United States v. Hooker Chems. & Plastics Corp. , 540 F.Supp. 1067, 1072 (W.D.N.Y. 1982), aff'd , 749 F.2d 968 (2d Cir. 1984). "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order." Citigroup , 752 F.3d at 294 ; see United States v. Mason Tenders Dist. Coun. of Greater N.Y. , No. 94 Civ. 6487 (RWS), 1994 WL 742637 (S.D.N.Y. Dec. 27 1994) (approving a consent decree for a lawsuit filed under ERISA).
II. The Proposed Consent Judgment Is Fair and Reasonable
When evaluating a proposed consent judgment for fairness and reasonableness, a court should "assess (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." Citigroup , 752 F.3d at 294-95 (citations omitted). "The 'primary focus' should be on 'ensuring the consent decree is procedurally proper.' " S.E.C. v. Caledonian Bank Ltd. , 317 F.R.D. 358, 369 (S.D.N.Y. 2016) (quoting Citigroup , 752 F.3d at 294-95 ). The Court assesses each factor as applied to the proposed Consent Judgment below.
A. The Basic Legality of the Proposed Consent Judgment
The Court finds there is basic legality in the proposed Consent Judgment. A proposed consent judgment with the U.S. government is legal as long as the court has authority to enter the judgment and the plaintiff has authority to enforce it. Caledonian Bank , 317 F.R.D. at 370 ; see Benjamin v. Jacobson , 172 F.3d 144, 158 (2d Cir. 1999) (terminating a consent decree entered by a district court because a statutory provision in the Prison Litigation Reform Act mandated termination of a consent decree providing for injunctive relief "that was approved or granted in the absence of" certain statutorily required findings). Plaintiff has alleged violations of ERISA § 409 for breaches of fiduciary duty and has asked for injunctive and monetary relief. (Dkt. 1 at ¶ 1; id. at 6). This Court has authority to enter a judgment in this action for injunctive and monetary relief pursuant to 29 U.S.C. § 1132(e), and Plaintiff has authority to enforce said judgment under 29 U.S.C. §§ 1132 (a)(2), (5), and (6), and 29 U.S.C. § 1132(d). See, e.g. , Chao v. Merino , 452 F.3d 174, 176 (2d Cir. 2006) (holding the defendants breached their fiduciary duty in a case brought by the secretary of labor under ERISA and that it was proper for the district court to enter a permanent injunction). The charges and relief are also accurately stated in the proposed Consent Judgment. (Dkt. 16 at 1-5). Therefore, the proposed Consent Judgment meets the basic legality standard.
B. The Proposed Consent Judgment Is Clear
The Court also finds that the proposed Consent Judgment is clear. See King v. Allied Vision, Ltd. , 65 F.3d 1051, 1058 (2d Cir. 1995) ("A clear and unambiguous order is one that leaves no uncertainty *113 in the minds of those to whom it is addressed ... who must be able to ascertain from the four corners of the order precisely what acts are forbidden." (internal quotations and citations omitted) ). Here, the proposed Consent Judgment lays out who it applies to (Jeffrey Bratcher, Sarah Bratcher, Global Tradequest, and the Plan), what the alleged violations are (ERISA § 409), and that Defendants admit to all the allegations in the complaint. (Dkt. 16 at 1-2, 5-6). It also specifically states exactly what injunctive relief is proposed, how much Defendants are ordered to pay, the form of payment, the time schedule for doing so, how Defendants will distribute the payments, and the manner in which Defendants will provide updates to Plaintiff. (Id. at 3-5). The Court determines that the proposed Consent Judgment will leave no uncertainty in the minds of Defendants, and consequently its terms meet the clearness standard.
C. The Proposed Consent Judgment Reflects a Resolution of the Claims
Additionally, the Court finds the proposed Consent Judgment reflects resolution of the claims in the complaint. Plaintiff claims that Global Tradequest, Sarah Bratcher, and Jeffrey Bratcher failed to deposit at least $23,612.19 in employee contributions and loan repayments into the Plan. (Dkt. 1 at ¶ 15). The injunctive relief in the proposed Consent Judgment demands that Defendants repay the Plan $19,865.07, distribute the Plan's assets to employees, and then terminate the Plan. (Dkt. 16 at 3-4); see Jones & Laughlin Ret. Plan v. LTV Corp. , 824 F.2d 202, 203 (2d Cir. 1987) (holding the consent order in an ERISA action was proper because plan participants were not entitled to pre-termination notice or hearings where it was agreed by the trustee and administrator of the plan that the plan must be terminated). Additionally, the proposed Consent Judgment prohibits Jeffrey and Sarah Bratcher from serving or acting as fiduciaries or service providers to any other employee benefit plan. (Dkt. 16 at 4). Therefore, the relief provided in the proposed Consent Judgment reflects resolution of the claims alleged against Defendants in the complaint.
D. The Proposed Consent Judgment Is Not Tainted
"A district court must examine whether a consent decree is 'tainted by improper collusion or corruption of some kind,' or 'raises a suspicion that the consent decree was entered into as a result of improper collusion between the [agency] and the settling party.' " Caledonian Bank , 317 F.R.D. at 373 (quoting Citigroup , 752 F.3d at 295-96 ). No evidence of collusion or corruption appears in the record. Therefore, the Court finds the proposed Consent Judgment is not tainted.
After considering all the above factors, the Court determines they all weigh in favor of finding the proposed Consent Judgment to be fair and reasonable.
III. The Injunctive Relief Does Not Disserve the Public Interest
Finally, the Court finds that the injunctive relief in the proposed Consent Judgment does not disserve the public interest. In order for a court to grant a permanent injunction in a proposed consent decree, "a district court must also consider the public interest...." Citigroup , 752 F.3d at 294. "The job of determining whether the proposed [agency] consent decree best serves the public interest, however, rests squarely with the [agency], and its decision merits significant deference...." Id. at 296. Second Circuit courts have held that a consent *114 judgment should be approved when no participants in the "proceeding have set forth a legitimate basis for concluding that the consent decree would harm the public or 'bar[ ] private litigants from pursuing their own claims.' " Caledonian Bank , 317 F.R.D. at 374 (alteration in original) (citing Citigroup , 752 F.3d at 297 ); see United States v. N.Y.C. Hous. Auth. , 326 F.R.D. 411, 417 (S.D.N.Y. 2018) ("[A]ny arguments regarding whether the Proposed Consent Decree is fair, reasonable, and in the public interest should be addressed by opposing the pending motion for approval of the Proposed Consent Decree."). Here, no Defendant has argued that the proposed Consent Judgment would harm the public interest. Therefore, the Court defers to the judgment of the Department of Labor and finds that the proposed Consent Judgment best serves the public interest.
CONCLUSION
Giving due deference to the desires of the parties seeking to enter this proposed Consent Judgment, this Court finds that the record shows the proposed Consent Judgment is fair and reasonable and that it comports with the public interest. Therefore, the proposed Consent Judgment (Dkt. 16) is approved, and the approved Consent Judgment, filed as an attachment hereto, constitutes Final Judgment pursuant to Fed. R. Civ. P. 54(b) and 58. The Clerk of Court is directed to close this case.
SO ORDERED.
Attachments
CONSENT ORDER AND JUDGMENT
Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor (the "Secretary") and Defendants Jeffrey Bratcher, Sarah Bratcher, and Global Tradequest, Inc. dba Buyquest, Inc. ("Global Tradequest") (collectively, "Defendants") agree to the entry of this Consent Order and Judgment as a complete resolution of all issues in contention between them in this matter.
This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. , as amended, and was brought by the Secretary pursuant to ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5), to obtain relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and to enjoin acts and practices which violate the provisions of Title I of ERISA.
The Secretary filed a complaint on January 5, 2018 against Defendants and the Global Tradequest 401(k) PSP & Trust (the "Plan"). The Plan was named as a Defendant for the purpose of ensuring complete relief among the parties under Rule 19 of the Federal Rules of Civil Procedure.
Pursuant to ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5), the Secretary has authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and other parties who are in violation of ERISA.
The Plan is and was at all relevant times an employee pension benefit plan within the meaning of ERISA § 3(2) and (3), 29 U.S.C. § 1002(2) and (3).
Global Tradequest was at all relevant times to this action the Plan Administrator and fiduciary of the Plan because it exercised authority or control respecting the management or disposition of the assets of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).
Jeffrey Bratcher was at all relevant times to this action a fiduciary of the Plan *115 because he exercised authority or control respecting the management or disposition of the assets of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).
Sarah Bratcher was at all relevant times to this action a fiduciary of the Plan because she was a Limited Trustee of the Plan and she exercised authority or control respecting the management or disposition of the assets of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).
Defendants admit all of the allegations in the Secretary's complaint. The Secretary and Defendants have agreed to resolve all matters in controversy in this action (except for the imposition by the Secretary of any penalty pursuant to ERISA § 502(1), 29 U.S.C. § 1132(1), and any proceedings related thereto) and said parties do now consent to entry of a Consent Order and Judgment by this Court.
Upon consideration of the record herein, and as agreed to by the Secretary and Defendants, the Court finds that it has jurisdiction to enter this Consent Order and Judgment.
IT IS THEREFORE ORDERED that:
1. Defendants are permanently enjoined and restrained from engaging in any further action in violation of Title I of ERISA.
2. Defendants are jointly and severally liable to the Plan in the total amount of $19,865.07. This figure is comprised of the following:
a. $18,992.79 representing the amount due to individual Plan participants and beneficiaries; and
b. $872.28 representing lost opportunity costs on the amount due to individual Plan participants and beneficiaries.
3. Defendants agree to repay the Plan $19,865.07 by December 3, 2018.
4. Defendants agree that if the Secretary assesses a penalty pursuant to ERISA § 502(1) in connection with the violations alleged in this matter, the "applicable recovery amount" shall include all amounts paid in accordance with this Consent Order and Judgment. Defendants reserve their right to seek a waiver of assessment under ERISA § 502 (0(3), 29 U.S.C. § 1132(1)(3).
5. Any participant interest Jeffrey and Sarah Bratcher may have in any existing or future assets of the Plan may be applied as an offset against the amount that the Secretary has alleged is due to the Plan, as authorized by ERISA § 206(d)(4), 29 U.S.C. § 1056(d)(4), to the extent that these participant interests are required to meet the restitution amount in paragraph 2.
6. Pursuant to the Court's power to provide appropriate equitable relief pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5), the Plan is hereby deemed amended to allow for such forfeiture of Jeffrey and Sarah Bratcher's individual Plan accounts.
7. Jeffrey and Sarah Bratcher agree that upon payment of the restitution described in Paragraphs 1 and 2, they will distribute or cause the distribution of the assets of the Plan in accordance with applicable Plan documents, ERISA, and other applicable federal law. Jeffrey and Sarah Bratcher shall complete such distribution by February 4, 2019.
8. Upon completing such distribution, Jeffrey and Sarah Bratcher shall terminate the Plan in accordance with applicable Plan documents, ERISA, and other applicable federal law. Jeffrey and Sarah *116 Bratcher shall terminate the Plan by February 4, 2019.
9. Jeffrey and Sarah Bratcher shall provide updates regarding the distribution of the Plan's assets and the termination of the Plan to the Secretary on a monthly basis. Jeffrey and Sarah Bratcher shall continue to send monthly status updates until the Plan is terminated. Jeffrey and Sarah Bratcher shall send the monthly status updates to the following address:
U.S. Department of Labor
Employee Benefits Security Administration
Boston Regional Office, Attn: Regional Director
JFK Federal Building
15 New Sudbury Street, Room 575
Boston, MA 02203
10. Upon termination of the Plan, Jeffrey and Sarah Bratcher shall be permanently enjoined from serving or acting as fiduciaries or service providers to any employee benefit plan subject to Title I of ERISA.
11. In the event that Jeffrey and Sarah Bratcher fail to meet the deadline set forth in Paragraphs 7-8, they agree that an Independent Fiduciary of this Court's choosing shall be required to be appointed to the Plan, and they will not oppose a motion by the Secretary to appoint an Independent Fiduciary.
12. In the event that an Independent Fiduciary is appointed by the Court due to Defendants' failure to meet the deadlines set forth in Paragraphs 7-8, Jeffrey and Sarah Bratcher will pay all administrative costs, fees, and expenses of the Independent Fiduciary, his or her assistants, attorneys, accountants, actuaries, and other necessary service providers. If appointed, the Independent Fiduciary will have the authority to administer the Plan and implement its orderly termination.
13. Eachparty agrees to bear his, herorits own attorneys' fees, costs and other expense incurred by such party in connection with any stage of this proceeding to date, including, but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act, as amended.
14. The parties agree that this document may be executed via counterpart signatures and that a signature via facsimile or PDF and electronic mail will be deemed an original signature and will be binding upon the party transmitting the signature by facsimile or PDF and electronic mail.
15. The Court directs the entry of this Consent Order and Judgment as a final order.
16. The Court shall maintain jurisdiction over this matter only for purposes of enforcing this Consent Order and Judgment.
17. Nothing in this Consent Order Judgment is binding on any government agency other than United States Department of Labor.